**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | Criminal Action No.: 3:15-cr-00572-JMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Crystal A. Blakely, | ) | **ORDER AND OPINION** |
| | ) | |
| Defendant. | ) | |

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This matter is before the court on the restitution amount to be set for Defendant Crystal A. Blakely. On July 6, 2016, Defendant entered a guilty plea to Conspiracy to Defraud the United States in violation of 18 U.S.C § 286, and Wire Fraud in violation of 18 U.S.C. § 1343. (ECF No. 70.) The scheme involved Defendant and her co-defendant, Hercules Baker ("Baker"), fraudulently filing income tax returns for various taxpayers. (ECF No. 81 at 1.) In some cases, the taxpayers were persuaded to provide their means of identification and other personal information in order to electronically file false tax returns. (*Id*.) In other cases, Defendant would add false information regarding the taxpayer's income so that a greater tax refund would be received. (*Id*.)

As presented in Defendant's presentence investigation report, the government maintains that Defendant, along with Baker, used the personal identification information of 261 taxpayers to file fraudulent claims for tax refunds. (ECF No. 80-2 at 2.) Baker recruited taxpayers and gathered personal identification information, and Defendant gathered personal identification information and filed fraudulent tax refund requests. (*Id*.) The government contends that in total, 261 taxpayers' identities were used to accomplish this scheme with a total intended loss amount of

$963,741.00. (*Id*.) While $963,741.00 worth of claims were filed, the government asserts that only $943,608.00 in refunds were paid and constitute the restitution amount. (*Id*.)

On July 11, 2017, the court held a restitution hearing on the issues of actual loss, intended loss, the restitution amount, and the relevant conduct that would inform such issues. (ECF No. 99.) The court scheduled a subsequent restitution hearing to allow for further needed research on the issues and the presence of the IRS agent assigned to investigate the case, Agent Cleveland. On December 12, 2017, the court reconvened the restitution hearing. (ECF No. 104.) Agent Cleveland testified at the hearing that she interviewed 15 taxpayers whose identities were used in this scheme and determined that there were 24 fraudulent claims filed. (ECF No. 80 at 8.) The loss amount attributed to these 15 taxpayers' claims is $102,006.00. (*Id*. at 9.) The U.S. Probation Office has determined that this scheme involved 246 other taxpayers for an additional loss amount of $861,735.00 (and an additional 266 fraudulent claims). (*Id*. at 8.) At the hearing, Defendant put forth the argument that for some of these 246 taxpayers, legitimate tax returns were submitted, and therefore, the loss amount could not be $861,735.00. Without interviewing any of the 246 taxpayers, Defendant posited that a determination cannot be made of how many of these tax returns were legitimate and how many were not, and thus the loss amount for these taxpayers cannot be calculated. Accordingly, Defendant espoused that the government has not met its burden of proving the loss amount by a preponderance of the evidence, reducing Defendant's restitution amount to $102,006.00.

At the hearing, Agent Cleveland refuted Defendant's argument by testifying that she arrived at the 266 fraudulent claims after interviewing the 15 individuals that stated the household

help income[1] designation on their tax returns was fraudulent, and after Defendant's testimony corroborated these individuals' statements. Agent Cleveland acknowledged that the claims used as relevant conduct all had the following similarities: (1) household help income was used on the tax return, (2) the tax return was filed from an IP address belonging to Defendant, Defendant's job at the time, or Baker, and (3) the money was deposited into Defendant or Baker's account or bank accounts that they controlled at the time.

## II. ANALYSIS

The Fourth Circuit has already dealt with an issue remarkably similar to this case. In *United States v. Ukwu*, the court held that evidence was sufficient to support the district court's estimate of tax loss the defendant caused, even though defendant asserted that the government's sample size of 24 fraudulent claims out of 1,000 was too small. 546 Fed. Appx. 305 (4th Cir. 2013). "While 24 is a relatively small sample, it amounts to 2% of the entire universe. This sample size does not paralyze us in our attempts to make inferences about the universe of all cases." *Id*. at 308 (citing *United States v. Littrice*, 666 F.3d 1053, 1061 (7th Cir. 2012) ("[R]equiring the government to go through all the needles in the haystack of materially fraudulent and false returns . . . would place a burden on the government beyond what the preponderance standard requires.")). Here, the government's sample size is 8%, a percentage in excess of what the Fourth Circuit has already endorsed as a sufficient sample size.

Further, the Fourth Circuit in *Ukwu* responds to Defendant's argument that similarity between the random sample and the non-random sample alone fails to prove that the random

---

[1] As explained by Agent Cleveland at the restitution hearing, "'household help' is a line item that is used for [those] who help people in their home, but it does not require a W-2. If someone does not have income, adding household help to a tax return can increase the earned income tax credit, which would generate a larger tax refund."

3

sample was due to criminality. The court rejected this argument, stating that "the government only needs to make a reasonable estimate of the tax loss, and the methodology here, although imperfect, meets that standard." *Ukwu*, 546 Fed. Appx. 305 at 309. The tax returns investigated at trial in *Ukwu* had comparably suspicious patterns as the tax returns in this case. *Id*. at 10. Many of the tax returns in *Ukwu* claimed that the taxpayer worked as a consultant for Mary Kay or in Nursing Services, but the taxpayers testified that they never worked for Mary Kay and never owned such health care businesses, similar to the household help designation and testimony in the present case. *Id*. Analogously, the tax returns contained dubious receipts and expenses and the invented businesses had revenues that were low or nonexistent. *Id*. Consequently, the court finds that the government has submitted a sound sampling methodology that would be sufficient for this court to extrapolate for the relevant conduct. Therefore, the court concurs with the restitution amount as disclosed in Defendant's presentence investigation report.

### III. CONCLUSION

Pursuant to 18 U.S.C. § 3663A, the court is given the authority to order restitution. Based on the credibility of this investigation and the precedent set forth in *Ukwu*, the court sets Defendant's restitution amount at $943,608.00. This amount is due immediately and owed joint and several with Hercules Baker.

**IT IS SO ORDERED.**

J. Michelle Childs
United States District Judge

January 5, 2018
Columbia, South Carolina

4